•            •           • 
 • • •




MEMORANDUM OPINION

No. 04-08-00675-CV

S. Stacy EASTLAND, Nancy Eastland LEATON, 
Appellants




v. 

CAMP MYSTIC, INC., Richard G. EASTLAND, Willetta (“Tweety”) EASTLAND, and
James M. EASTLAND

From the 198th Judicial District Court, Kerr County, Texas 
Trial Court No. 07-0728-B, the Honorable Emil Karl Prohl presiding

No. 04-08-00741-CV

IN RE S. Stacy EASTLAND and Nancy E. LEATON
Original Mandamus Proceeding



 
Opinion by:    Phylis J. Speedlin, Justice
 
Sitting:            Karen Angelini, Justice
Phylis J. Speedlin, Justice
Steven C. Hilbig, Justice
 
Delivered and Filed:   February 4, 2009

TRIAL COURT’S ORDER DENYING ARBITRATION AFFIRMED; PETITION FOR WRIT OF
MANDAMUS DISMISSED FOR LACK OF JURISDICTION

 
            In these consolidated proceedings, S. Stacy Eastland and Nancy Eastland Leaton (collectively
“appellants”) complain of the trial court’s order denying their motion to compel arbitration.


 We
dismiss the petition for writ of mandamus for lack of jurisdiction and affirm the trial court’s order
denying appellants’ motion to compel arbitration. 
Factual and Procedural Background 
            Camp Mystic is a summer camp for girls in Hunt, Texas. Until June of 1998, it was a family
owned and operated company named Camp Mystic, Inc. (“Old CM”). In 1998, the family
restructured Old CM when they created a new company, Camp Mystic, Inc. (“New CM”), and
changed Old CM’s name to Natural Fountains Properties, Inc. (“NFP”). After restructuring the
company, NFP continued to own the real estate where the camp was located and leased it to New
CM under the Ground and Building Lease (“lease”). Richard Eastland (“Dick”) and his wife
Willetta Eastland (“Willetta”) are the sole owners of New CM and they run the Camp Mystic
operations. NFP currently has numerous shareholders, including appellants who are minority
shareholders, and Dick who is a majority shareholder. 
            Under the lease between New CM and NFP, New CM operates the camp on the leased
premises and pays rent to NFP under the provisions of the lease. The rent and arbitration provisions
of the lease, provides as follows:
Section 3.02. The annual rent due (herein called “Annual Rent
Due”) hereunder shall be that certain product obtained by multiplying
the Replacement Cost of the Demised Premises on January 1 of each
year, as reasonably determined by Landlord, by the greatest of the
then (i) Federal Short-Term Rate, (ii) Federal Mid-Term Rate, (iii)
Federal Long-Term Rate or (iv) six and one-half percent (6.5%). If
there is any dispute in any year as to the Replacement Cost of the
Demised Premises it shall be resolved by arbitration pursuant to
procedures outlined in Exhibit 2 and incorporated herein with rent
being payable based on Landlord’s determination until resolution of
the issue, with an appropriate cash adjustment (if necessary) being
made within 30 days thereafter. For the remaining period of 1998,
the Annual Rent Due shall be Three Hundred Thousand Dollars
($300,000).

After operating under the lease for a number of years, a dispute arose between appellants and Dick
concerning the amount of the rent that New CM had been paying under the rent provision in the
lease. Dick, Willetta, and New CM ( collectively “appellees”) filed a declaratory judgment action,
naming as defendants NFP and some of the individual shareholders of NFP, which included
appellants. The suit sought a declaration of appellees’ rights under the lease, including in part that
Camp Mystic, Inc. had fully paid the rent in compliance with the lease and that the arbitration
provisions in the lease were indefinite and unenforceable. Appellants counterclaimed, seeking
declaratory relief against appellees, conversion of the Camp Mystic trademark, and individual and
derivative claims on behalf of NFP for breach of the lease and fiduciary duties. 
            Thereafter, appellees filed a motion for partial summary judgment on their declaratory
judgment claim, arguing in part that the rent and arbitration provisions of the lease are
unenforceable. Before the trial court ruled on the motion for partial summary judgment, appellants 
filed a motion to compel arbitration. The trial court then entered an order on the motion for partial
summary judgment, holding the rent and arbitration provisions unenforceable. After holding a
hearing on the motion to compel arbitration, the trial court denied the motion. The trial court held
in part that the Federal Arbitration Act (“FAA”) does not apply to the transaction and found that in
accordance with the findings of the trial court’s order granting the motion for partial summary
judgment, the arbitration provision in the lease is unenforceable.
            Appellants seek review of the trial court’s order denying appellants’ motion to compel
arbitration through a petition for writ of mandamus, in compliance with the FAA, and through an
interlocutory appeal, in compliance with the Texas Arbitration Act (“TAA”). See Jack B. Anglin
Co. v. Tipps, 842 S.W.2d 266, 269-70 (Tex. 1992) (relief from the denial of arbitration sought under
the FAA must be reviewed by mandamus); Tex. Civ. Prac. & Rem. Code. Ann. § 171.098(a)(1)
(Vernon 2006) (relief from the denial of arbitration sought under the TAA must be reviewed by
interlocutory appeal). Analysis
A.        Mandamus or Interlocutory Appeal 
            As a preliminary matter, we first address whether this court has jurisdiction over the petition
for writ of mandamus and the interlocutory appeal. The lease agreement upon which appellants rely
in order to compel arbitration does not purport to be governed by either the FAA or the TAA. 
Therefore, in their motion to compel arbitration appellants sought arbitration under both the FAA
and the TAA. However, the trial court found that the FAA did not apply. Because the applicability
of the FAA affects our jurisdiction to consider the petition for writ of mandamus, we must review
the trial court’s determination that the FAA does not apply.
            When there is no express agreement to arbitrate under the FAA, a party may establish the
applicability of the FAA by showing that the transaction affects or involves interstate commerce. 
See, Anglin, 842 S.W.2d at 269-70; Associated Glass, Ltd. v. Eye Ten Oaks Invs., Ltd., 147 S.W.3d
507, 511 (Tex. App.San Antonio 2004, orig. proceeding); see also Allied-Bruce Terminix Co. v.
Dobson, 513 U.S. 265, 279 (1995) (holding that “the ‘transaction’ in fact involve interstate
commerce”). When, as here, the arbitration agreement is silent as to whether the FAA or the TAA
applies, the question of whether the transaction affects interstate commerce is one of fact. See e.g.,
Associated Glass, 147 S.W.3d at 511; Stewart Title Guar. v. Mack, 945 S.W.2d 330, 333 (Tex.
App.—Houston [1st Dist.] 1997, orig. proceeding [leave denied]); see also Ikon Office Solutions,
Inc. v. Eifert, 2 S.W.3d 688, 696 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Interstate
commerce has been defined as “trade, commerce, transportation, or communication among the
several States, or between any foreign country and any place or ship outside thereof.” See Robinson
v. TCI/US West Commc’ns Inc., 117 F.3d 900, 904 (5th. Cir. 1997) (citing 15 U.S.C. § 78c(a)(17)). 
“The burden is on the party seeking to compel arbitration to establish its right to arbitrate under the
Federal Arbitration Act.” Ikon, 2 S.W.3d at 696. 
              The only material evidence before the trial court with regard to the motion to compel
arbitration consisted of the motion, the response, and the lease agreement. In the motion to compel
arbitration, appellants only provided one sentence to support their contention that the FAA applied:
“It is undisputed that NFP is a closely held corporation . . . and that the camping business operated
by New CM on NFP property involves interstate commerce invoking the Federal Arbitration Act.” 
In response, appellees noted that both New CM and NFP are Texas Corporations, the property that
is the subject of the lease is in Kerr County, Texas, and NFP is not involved in the camp operations
or in any sale of goods; accordingly, the lease transaction between New CM and NFP did not involve
interstate commerce, and the TAA, not the FAA applied.
            Now, appellants argue to this court that the lease itself is evidence that the property is rented
for the exclusive operations of a girls’ summer camp, and some of the campers and counselors came
from out of state, as evidenced by a Camp Mystic brochure. However, the brochure was not before
the trial court with regard to the motion to compel arbitration, and was never used by appellants in
the trial court to support their contention that the transaction affected interstate commerce. In
addition, the transaction at issue concerns the lease of real estate located in Texas between NFP, a
Texas corporation, and New CM, also a Texas corporation. No evidence was introduced in the trial
court that shows the lease transaction affects interest commerce. Therefore, based on the evidence
before the trial court, we cannot say the trial court erred in finding the FAA does not apply. 
            Appellants now attempt to make an additional argument to this court that the transaction
affects interstate commerce because Dick has filed documents with the U.S. Patent and Trademark
Office averring that the Camp Mystic trademark has been in continuous use in interstate commerce
for at least five years. However, these documents were not before the trial court with regard to the
motion to compel arbitration. In addition, the use of the Camp Mystic trademark in interstate
commerce does not mean that the lease transaction between NFP and New CM involved interstate
commerce. Accordingly, because we agree with the trial court that the FAA does not apply, we
dismiss appellants’ petition for writ of mandamus for lack of jurisdiction and proceed to consider
the merits of the interlocutory appeal. 
B.        Motion to Compel Arbitration
            In its order denying appellants’ motion to compel arbitration, the trial court found that the
arbitration clause in the lease was, by its very own language, not enforceable. Although appellants
do not specifically challenge the validity of the trial court’s finding that the arbitration clause is
unenforceable, we must consider the merits of that finding. See J.M. Davidson, Inc. v. Webster, 128
S.W.3d 223, 227 (Tex. 2003) (holding that when a party resists arbitration, the trial court must
determine whether a valid agreement to arbitrate exists). The trial court’s determination as to the
validity of an arbitration agreement is subject to de novo review. Id. Although there is a strong
presumption favoring arbitration, that presumption arises only after the party seeking to compel
arbitration proves that a valid arbitration agreement exists. Id. Under both the FAA and the TAA,
we apply ordinary state contract law principles in order to decide whether a valid arbitration
agreement exists. See In re D. Wilson Constr. Co., 196 S.W.3d 774, 781 (Tex. 2006) (citing First
Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). 
            The lease provides that annual rent due is determined by multiplying one of four specified
rates by the “Replacement Cost of the Demised Premises” on January 1 of each year. The lease also
sets forth three relevant definitions. “Demised premises” is defined as “the Demised Land and the
Buildings.” The lease then defines “Demised Land” as “those certain lands known generally as
Camp Mystic . . . together with all easements and rights appurtenant thereto.” Finally, “Replacement
Cost of Demised Premises” is defined as “the then current cost (construction, architectural,
engineering or otherwise) of replacing the Demised Premises . . . .” At the trial court’s summary
judgment hearing, appellees successfully argued to the trial court that the “replacement cost” of the
real estate portion of the demised premises is not ascertainable because “replacement cost” cannot
be assigned to real property since real property is individually unique and cannot be replaced. The
trial court agreed with appellees, providing in the order granting the motion for partial summary
judgment as follows:
The lease agreement defines ‘Demised Premises’ to include the real
estate as described in Exhibit A. A tract of real estate is individually
unique. It is not ‘replaceable.’ A fair market value may be assigned
to the ‘real property’; however, this is not the same as the
‘Replacement Costs’ of the real property. 
 
 The Arbitration Procedures set forth in Exhibit 2 call for two
real estate appraisers to determine the ‘Replacement costs of Demised
Premises’ which includes the real estate. Since the ‘Replacement
Cost’ of the real estate portion of the demised premises in[sic] not
ascertainable and is not the same as Fair Market Value, the
Arbitration Procedures are rendered unenforceable.

In ruling on the motion to compel arbitration, the trial court’s order incorporated its prior findings
from the order granting appellee’s motion for partial summary judgment, holding again that the
arbitration clause in the lease agreement is by its very language unenforceable. We agree that the
“replacement cost” of the real estate is not ascertainable because “replacement cost” cannot be
assigned to real property since real property is individually unique and is not replaceable. See Metro.
Life Ins. Co. v. La Mansion Hotels & Resorts, Ltd., 762 S.W.2d 646, 652 (Tex. App.—San Antonio
1998, writ dism’d) (holding that “[e]very piece of real property is considered unique”); Home Sav.
of Am., F.A. v. Van Cleave Dev. Co., 737 S.W.2d 58, 59 (Tex. App.—San Antonio 1987, no writ). 
Accordingly, under the lease, we agree with the trial court that because of the language used in the
lease agreement, the arbitration agreement was not enforceable.
            Appellants challenge the trial court’s determination that the trial court, not the arbitrator, is
to decide whether the arbitration provision is enforceable. Appellants specifically assert that issues
regarding the validity of a contract as a whole are matters for the arbitrator to decide. See Dewey v.
Wegner, 138 S.W.3d 591, 602 (Tex. App.—Houston [14th Dist.] 2004, no pet.). However, as
previously mentioned, the trial court is charged with determining whether a valid agreement to
arbitrate exists. See Webster, 128 S.W.3d at 227. Additionally, the Texas Supreme Court has held
that “the authority of arbitrators is derived from the arbitration agreement and is limited to a decision
of the matters submitted therein either expressly or by necessary implication.” Gulf Oil Corp. v.
Guidry, 160 Tex. 139, 327 S.W.2d 406, 408 (1959) (considering the arbitrator’s authority to make
a determination on an issue once the case has been submitted to arbitration). Here, the plain
language in exhibit 2 of the lease sets forth the very limited role of the arbitrator, and that limited
role does not include determining whether the arbitration provision is enforceable. 
            According to the lease, if the parties disagree on the replacement cost of the demised
premises, each party appoints one appraiser, who then provides a written opinion of the replacement
cost of the demised premises. Then, “[i]f the two opinions of Replacement Cost of Demised
Premises are the same, they shall be binding on all parties involved as the final determination of
Replacement Cost of Demised Premises . . . . If the two opinions differ, and the parties to the dispute
still cannot agree on Replacement Cost of the Demised Premises, the parties shall apply for
arbitration of the dispute . . . .” When the issue goes to arbitration, “[t]he arbitrator . . . shall
determine Replacement Cost of Demised Premises by selecting one of the opinions rendered by the
two appraisers and submitted to the AAA.” In other words, based on the agreement at issue, the
arbitrator is not charged with any underlying calculations, but simply chooses between one of the two
opinions submitted. As a result, it was proper for the trial court, not the arbitrator, to decide whether
the underlying lease, defining “replacement cost of demised premises,” was enforceable. See
Webster, 128 S.W.3d at 227. 
            Appellants also allege that the trial court refused to compel arbitration because it disagreed
with the style of the arbitration, which appellants define as “baseball arbitration.” However, this
allegation assumes that the trial court made its decision that the arbitration provision is
unenforceable based on its disagreement with the procedures set out for arbitration. We find nothing
in the record before us to support such a claim.Conclusion
            As a result of the foregoing, we dismiss the petition for writ of mandamus for lack of
jurisdiction and affirm the trial court’s order denying appellants’ motion to compel arbitration. Our
stay order, entered October 15, 2008, is vacated.
 
Phylis J. Speedlin, Justice