ACCEPTED
04-14-00889-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
1/27/2015 12:12:08 PM
KEITH HOTTLE
CLERK

# IN THE
# FOURTH COURT OF APPEALS
# AT SAN ANTONIO

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
01/27/2015 12:12:08 PM
KEITH E. HOTTLE
Clerk

## CAUSE NO. 04-14-00889-CV

## ENDURA ADVISORY GROUP, LTD.,
## APPELLANT

## VS.

## DOMINIC ALTOMARE,
## APPELLEE

## INTERLOCUTORY APPEAL FROM CAUSE NO. 2014-CI-11780
## IN THE 131ST JUDICIAL DISTRICT COURT, BEXAR COUNTY, TEXAS
## MOTION HEARD BY JUDGE MARTHA TANNER, VISITING JUDGE,
## SITTING IN THE 57TH JUDICIAL DISTRICT COURT

## APPELLANT, ENDURA ADVISORY GROUP, LTD.'S, BRIEF

RICHIE & GUERINGER, P.C.

GAY GUERINGER
State Bar No. 08571400
DOUG K. CLEMONS
State Bar No. 24032083
112 East Pecan Street, Suite 1420
San Antonio, Texas  78205
Tel: 210-220-1080 / Fax: 210-220-1088
Email: ggueringer@rg-sanantonio.com
Email: dclemons@rg-sanantonio.com
ATTORNEYS FOR APPELLANT,
ENDURA ADVISORY GROUP, LTD.

## APPELLANT REQUESTS ORAL ARGUMENT

**NO. 04-14-00889-CV**

**ENDURA ADVISORY GROUP, LTD., APPELLANT**

**VS.**

**DOMINIC ALTOMARE, APPELLEE**

**IDENTITY OF PARTIES**

| Party | Represented By: |
|---|---|
| Endura Advisory Group, Ltd.,<br>*Appellant/Intervenor* | Gay Gueringer (SBN 08571400)<br>Doug K. Clemons (SBN 24032083)<br>Richie & Gueringer, P.C.<br>112 East Pecan Street, Suite 1420<br>San Antonio, Texas 78205<br>Tel: 210-220-1080 / Fax: 210-220-1088<br>Email: ggueringer@rg-sanantonio.com<br>Email: dclemons@rg-sanantonio.com |
| Dominic Altomare,<br>*Appellee/Plaintiff* | Eric A. Pullen (SBN 24007881)<br>Sarah A. Reyes (SBN 24088292)<br>Pulman, Cappuccio, Pullen,<br>   Benson & Jones, LLP<br>2161 N.W. Military Hwy, Suite 400<br>San Antonio, Texas 78213<br>Tel: 210-222-9494 / Fax: 210-892-1610<br>Email: epullen@pulmanlaw.com<br>Email: sreyes@pulmanlaw.com |
| Josh Reneau,<br>*Defendant* | Gay Gueringer (SBN 08571400)<br>Doug K. Clemons (SBN 24032083)<br>Richie & Gueringer, P.C.<br>112 East Pecan Street, Suite 1420<br>San Antonio, Texas 78205<br>Tel: 210-220-1080 / Fax: 210-220-1088<br>Email: ggueringer@rg-sanantonio.com<br>Email: dclemons@rg-sanantonio.com |

# TABLE OF CONTENTS

INDEX OF AUTHORITIES................................................................................iv

STATEMENT OF THE CASE........................................................................1

STATEMENT OF JURISDICTION................................................................1

REQUEST FOR ORAL ARGUMENT ..........................................................1

APPELLANT'S ISSUES PRESENTED FOR REVIEW.............................1

INTRODUCTION .........................................................................................2

STATEMENT OF FACTS .............................................................................2

SUMMARY OF THE ARGUMENT ............................................................8

ARGUMENT AND AUTHORITIES ............................................................8

**Issue No. 1**:  The trial court erred by denying Endura's Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process and the Motion for Reconsideration of Denial of Its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process...................................9

   A.  Standard of Review...................................................................................9

   B.  The Pleadings and Evidence Presented Establish that the Parties' Dispute Arises from the Separation Agreement Therefore Triggering the Dispute Resolution Process...................................................................10

   C.  A Valid Agreement to Arbitrate Exists Between Endura and Altomare....11

   D.  The Claims Brought in the Lawsuit Fall Within the Separation Agreement Triggering the Alternative Dispute Resolution Process...........12

   E.  Reneau is an Agent or Representative of Endura .......................................13

   F.  Endura Intended for the Separation Agreement to include Reneau ...........17

   G.  The Separation Agreement.........................................................................19

**Issue No. 2**: Altomare failed to present or prove a defense to the enforcement of the Dispute Resolution Policy..........................................22

CONCLUSION ............................................................................................23

PRAYER ......................................................................................................23

CERTIFICATE OF COMPLIANCE............................................................25

CERTIFICATE OF SERVICE .....................................................................25

APPENDIX ..................................................................................................26

# INDEX OF AUTHORITIES

## CASES

*Anglo-Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.,* 352 S.W.3d 445, 450-51 (Tex. 2011) ................................................................................18

*Dell, Inc. v. Muniz*, 163 S.W.3d 177, 180 (Tex. App. – San Antonio 2005, orig. proceeding)................................................................................10

*Emerald Tex. Inc. v. Peel*, 920 S.W.2d 398, 403 (Tex. App. – Houston [1st Dist.] 1996, no writ) ................................................................................17

*EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)..................................10

*Garcia v. Huerta*, 340 S.W.3d 864, 868 (Tex. App. – San Antonio 2011, pet. denied) ................................................................................10

*Gutierrez v. Deloitte & Touche*, 100 S.W.3d 261, 271 (Tex. App. – San Antonio 2002, no pet.).................................................................................14

*In re B.P. Am. Prod. Co.*, 97 S.W.3d 366, 370 (Tex. App. – Houston [14th Dist.] 2003, orig. proceeding)................................................................13, 21

*In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006) ......................13, 17

*In re Medallion, Ltd.*, 70 S.W.3d 284, 287-288 (Tex. App. – San Antonio 2002, orig. proceeding).................................................................10, 11, 12

*In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 893 (Tex. 2010) ......................10

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) ................................................................................17

*J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003)............11, 12, 22

*Jorgensen v. Stuart Place Water Supply Corp.*, 676 S.W.2d 191, 194 (Tex. App. – Corpus Christi 1984, no writ)................................................................22

*Lyons v. Lindsey Morden Claims Mgmt., Inc.* 985 S.W.2d 86, 90 (Tex. App. – El Paso 1998, no pet.).................................................................................23

*Neely v. Intercity Mgmt. Corp.*, 732 S.W.2d 644, 646 (Tex. App. – Corpus Christi 1987, no writ)..................................................................14, 16

*Perry Homes v. Cull*, 258 S.W.3d 580, 584 (Tex. 2008)...........................................10

*Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998) ..........................................10

*Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 443 S.W.3d 196, 202 (Tex. App – Corpus Christi 2013, pet. filed).......................................................10

*Sendjar v. Gonzales*, 520 S.W.2d 478, 481 (Tex. Civ. App. – San Antonio 1975, no writ) ..............................................................................................14

*Townsend v. Univ. Hosp.-Univ. of Colo.*, 83 S.W.3d 913, 921 (Tex. App. – Texarkana 2002, pet denied) .................................................................14

*Welch v. Coca-Cola Enters., Inc.*, 36 S.W.3d 532, 540 (Tex. App. – Tyler 2000, pet. withdrawn)..............................................................................14, 22

## STATUTES

TEX. CIV. PRAC. REM. CODE § 171.098(a)(1) ...........................................................1

## TREATISES

3 TEX. JUR. 3D *Agency* §50 (1996) .......................................................................22

## STATEMENT OF THE CASE

Nature of the Case:       This is a breach of contract case triggering an arbitration provision.

Trial Court:               The Honorable Judge Martha Tanner, Visiting Judge sitting in the 57th Judicial District, Bexar County, Texas.

Trial Court Disposition:   Denial of Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process and Denial of same on Motion for Reconsideration.[1]

## STATEMENT OF JURISDICTION

This Honorable Court has jurisdiction over this interlocutory appeal pursuant to Section 171.098 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. REM. CODE § 171.098(a)(1).

## REQUEST FOR ORAL ARGUMENT

The Appellants, Endura Advisory Group, Ltd. ("**Endura**"), respectfully requests oral argument. Oral discussion of the facts and the applicable precedent would benefit the Court.

## APPELLANT'S ISSUES PRESENTED FOR REVIEW

The Trial Court erred in refusing to compel the alternative dispute resolution process because: (1) the pleadings and evidence presented show the parties'

---

[1] For ease of reference in referring to the Reporter's Record, the hearing conducted on October 27, 2014 will be referred to as the Oct. Reporter's Record ("**Oct. R.R.**") and the re-hearing conducted on November 7, 2014 will be referred to as the Nov. Reporter's Record ("**Nov. R.R.**").

dispute arises out of the Separation Agreement which triggers the Dispute Resolution Policy contained within the Separation Agreement and (2) Dominic Altomare ("**Altomare**") failed to present or prove a defense to the enforcement of the Dispute Resolution Policy.

## INTRODUCTION

1.    This is a suit for breach of contract triggering an agreement to arbitrate. Endura and Altomare included an alternative dispute resolution process as part of a bargained for, valid and enforceable contract governing the departure of Altomare from Endura. Altomare's suit against Josh Reneau ("**Reneau**") requiring Endura's Intervention in this case fall within those claims released in the contract and trigger the alternative dispute resolution process. The trial court refused to compel the alternative dispute resolution process and abate the proceeding pending completion of the alternative dispute resolution process. Endura asks this Court to reverse the trial court and remand to compel arbitration.

## STATEMENT OF FACTS

2.    This case involves a dispute over real estate commissions and an agreement to arbitrate addressed in a Separation Agreement (the "**Separation Agreement**"). Endura Advisory Group, Ltd. ("**Endura**") is seeking to compel arbitration of Nick Altomare's ("**Altomare**") claims against Josh Reneau ("**Reneau**") and Endura's claims against Altomare based on an arbitration

agreement contained within the Separation Agreement executed by Altomare governing his departure from Endura and all claims released as a part of that departure. There were two hearings in the trial court on Endura's Motion to Compel Arbitration. The first hearing occurred on October 27, 2014 and the re-hearing occurred on November 7, 2014.

3. By way of background, Altomare is a real estate broker who was a limited partner of Endura, a commercial real estate company. (C.R. Pg. 10).[2] In August of 2013, Endura offered Altomare an opportunity to disassociate from Endura under more beneficial terms than those required of Endura (in its Second Amended and Restated Limited Partnership Agreement) in lieu of Endura terminating his position as a limited partner and as an agent/independent contractor. (C.R. Pg. 10). In order to avoid being terminated, Altomare elected to "voluntarily" separate from Endura. (C.R. Pg. 10). On or about August 19, 2013, Altomare executed the Separation Agreement relating to his dissociation from Endura. (Appendix, Confidential Exhibit 1, a true and correct copy of the Separation Agreement.[3]) As part of the Separation Agreement, Altomare released Endura and a litany of others including its agents and representatives from all

---

[2] "**C.R.**" will denote the Clerk's Record.

[3] Confidential Exhibit 1 was admitted during the November 7, 2014 hearing (Nov. R.R. Pg. 31, Line 6-Pg. 32, Line 1) but was withdrawn at the end of the hearing to preserve confidentiality (Nov. R.R. Pg 45, Line 6-17). Pursuant to the Clerk's instructions, a true and correct copy of Confidential Exhibit 1 has been filed as part of a separate appendix.

claims except certain commissions which might come due from those limited specific transactions identified on an attached list (the "**List**") to the Separation Agreement. (Appendix, Confidential Exhibit 1, Separation Agreement, page 2, paragraph 5 and attached List.) Pursuant to the terms of the Separation Agreement, Altomare expressly represented in writing that the List encompassed all of the pending transactions on which he was actively involved at the time of his separation. (Appendix, Confidential Exhibit 1, Separation Agreement, pg. 2-3, paragraph 6). If a claim for any commission was not included on the List, no compensation would be due Altomare. But for the Separation Agreement Endura had no obligation to pay Altomare commissions for closings occurring after he was no longer associated with Endura.

4. Most importantly and at the heart of this appeal, Altomare agreed, by way of the Separation Agreement, that a dispute between Altomare and Endura (the Partnership), related to his association with Endura or the Separation Agreement, which specifically include claims released as against Endura's agents and representatives,[4] would be resolved through the Dispute Resolution Policy set out in the Endura Employee Handbook. (Appendix, Confidential Exhibit 1, Separation Agreement, page 4, paragraph 13.) Altomare was apprised of the

---

[4] Paragraph 5 of the Separation Agreement is the "release of claims" paragraph and was purposely drafted broadly to include Endura's related entities, officers, members, partners, limited partners, employees, directors, managers, agents, trustees, administrators, representatives, subsidiaries, affiliates, successors and assigns.

Dispute Resolution Policy contained within the Separation Agreement and accepted it. (C.R. Pg. 20). Additionally, Altomare was represented by counsel who negotiated the terms of the Separation Agreement and required changes to the proposed Separation Agreement. (C.R. Pg. 20); (Nov. R.R. Pg. 32, line 22 through Pg. 33, line 3). The Alternative Dispute Resolution provision was a bargained for term of the Separation Agreement. (C.R. Pg. 20); (Nov. R.R. Pg. 17, line 7-13). Altomare does not dispute the existence of an Alternative Dispute Resolution provision or that it is a valid agreement to arbitrate. (Oct. R.R. Pg. 6, Line 3-7). The Dispute Resolution Policy contained in Endura's Employee Handbook states in relevant part:

> The Arbitration process shall be conducted under Texas Civil Practices and Remedies Code, Section 151.001 et seq. The arbitrator will meet the qualifications of a Special Judge as described in this statute and will also be impartial. This Policy is intended to be construed and subject to Texas law.
>
> Either the employee or Endura may commence the Arbitration proceeding by giving written notice to the other party, stating that the Arbitration process is being commenced, the specific facts which give rise to the dispute, the legal basis, if any, which the notifying party is invoking to support some claim for damages or relief, the relief the notifying party is seeking and a correct address, phone number and, if available, a facsimile number and email address at which the notifying party can be reached ("Notice"). The notifying party shall file a Petition in the applicable District court, or other court of original jurisdiction, which shall be abated pending the decision by the Arbitrator.

(Appendix, Exhibit 2, true and correct copy of Endura Advisory Group, Ltd.'s Dispute Resolution Policy and Procedures.); (C.R. Pg. 22-24).

5.     Reneau is a licensed commercial real estate agent working for Endura. (Nov. R.R. Pg. 23, line 3-6).  At the time of the execution of the Separation Agreement and at all times relevant to this suit, Reneau was an agent and representative of Endura.  (Nov. R.R. Pg. 13, line 10-18 and Nov. R.R. Pg. 32, line 2-18)  Reneau has been an associate vice-president for Endura for the last two years and his business cards issued by Endura reflect the title of associate vice-president.  (Nov. R.R. Pg. 13, line 19-21 and Nov. R.R. Pg. 19, line 10-12). Reneau, as an agent for Endura, is the point of contact on all real estate listings in which he is involved.  He works exclusively for Endura.  (Nov. R.R. Pg. 16, line 11-13).  He is required to attend bi-weekly sales meetings and Endura pays for his marketing of properties as well as his office space.  (Nov. R.R. Pg. 16, line 14-18). Clearly, Reneau is an agent and representative for Endura.

6.     On July 28, 2014, Altomare filed suit against Reneau for breach of contract relating to commissions on real estate transactions that Reneau had allegedly failed to pay Altomare.  (C.R. Pg. 1-4.)  Importantly, the real estate transactions on which Altomare bases his claims against Reneau were not included on the List, meaning Altomare was not actively involved in those transactions. (C.R. Pg. 7).  On August 29, 2014, Reneau timely answered Altomare's suit and on

September 19, 2014, Endura intervened in the suit asserting claims against Altomare for breach of contract, fraud and for declaratory relief as it relates to the Separation Agreement. (C.R. Pg. 9-17.) Also contained within Endura's Plea in Intervention was a section putting Altomare on notice that this dispute is required to be submitted to a Special Judge in accordance with Endura's Dispute Resolution Policy. (C.R. Pg. 15.)

7. On October 16, 2014, Endura filed its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process (the "**Motion**"). (C.R. Pg. 18-24.) On October 27, 2014, the Honorable Judge Martha Tanner conducted a hearing and denied Endura's Motion indicating on the Judge's Notes, "Court finds insufficient evidence to determine Reneau meets any criteria in Separation Agreement therefore motion respectfully denied." (Visiting Judge sitting in the 57th Judicial District by assignment; C.R. Pg. 31, 49-50); (Appendix, Exhibit 3, a true and correct copy of the Order Denying Endura Advisory Group, Ltd.'s Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process signed on December 1, 2014.)

8. On October 30, 2014, Endura filed its Motion for Reconsideration of the Honorable Martha Tanner's denial of Endura's Motion. (C.R. Pg. 32-39.) On

November 7, 2014, the Honorable Martha Tanner conducted an evidentiary hearing and denied Endura's Motion for Reconsideration of its Motion. (C.R. Pg. 51-52); (Appendix, Exhibit 4, a true and correct copy of the Order Denying Endura Advisory Group, Ltd.'s Motion for Reconsideration of Denial of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process signed December 1, 2014). The Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process and the Motion for Reconsideration of Denial of Its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process are sometimes collectively referred to herein as the "**Motions**." Endura brings this appeal, asking this Court to reverse the trial court's orders denying Endura's Motions and remand to compel arbitration.

## SUMMARY OF THE ARGUMENT

For additional consideration paid to him, Altomare executed a Separation Agreement when he departed Endura, releasing all claims against Endura, its agents and representatives and others, except for certain limited, pending real estate transactions specifically identified. The Separation Agreement contains an arbitration agreement for any claims that arise out of the Separation

Agreement. Altomare has now sued Josh Reneau for commissions on real estate transactions closed and paid to Josh Reneau by and through Endura after Altomare was no longer a broker for Endura. None of the transactions sued upon are listed in the Separation Agreement. The evidence presented to the trial court clearly establishes Josh Reneau is an agent or representative of Endura; therefore, the claims brought by Altomare against Reneau were released by and through the Separation Agreement and otherwise triggered the arbitration agreement. Endura has established as a matter of law: (i) the existence of a valid arbitration agreement and (ii) that claims in this lawsuit are within the scope of the arbitration agreement. Accordingly, the trial court erred by denying Endura's Motion to Compel Arbitration and Motion for Reconsideration.

## ARGUMENT AND AUTHORITIES

**Issue No. 1**: The trial court erred by denying Endura's Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process and the Motion for Reconsideration of Denial of Its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process.

## A.    Standard of Review

9.    In reviewing an order denying a motion to compel arbitration under the Texas Arbitration Act, the appellate courts apply a no-evidence standard to the trial court's factual determinations and a de novo standard to legal determinations.

*Garcia v. Huerta*, 340 S.W.3d 864, 868 (Tex. App. – San Antonio 2011, pet. denied). Furthermore, a trial court's interpretation concerning the scope of a contract's arbitration clause is a question of law reviewed under a de novo standard. *Dell, Inc. v. Muniz*, 163 S.W.3d 177, 180 (Tex. App. – San Antonio 2005, orig. proceeding). In a de novo review, the trial court's discretion is given absolutely no deference. *Quick v. City of Austin*, 7 S.W.3d 109, 116 (Tex. 1998).

**B.** **The Pleadings and Evidence Presented Establish that the Parties' Dispute Arises from the Separation Agreement Therefore Triggering the Dispute Resolution Process**

10. Texas jurisprudence embraces arbitration. *Royston, Rayzor, Vickery & Williams, LLP v. Lopez*, 443 S.W.3d 196, 202 (Tex. App – Corpus Christi 2013, pet. filed). Since 1846, Texas law has provided that parties to a dispute may choose to arbitrate rather than litigate. *Perry Homes v. Cull*, 258 S.W.3d 580, 584 (Tex. 2008) *see also EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 90 (Tex. 1996)(Texas law has historically favored settling disputes by arbitration). The Texas Supreme Court has recognized arbitration as a potentially efficient, cost-effective, and speedy means of resolving disputes. *See In re Olshan Found. Repair Co.*, 328 S.W.3d 883, 893 (Tex. 2010). Thus, a party seeking to compel arbitration must establish (1) an agreement by the parties to arbitrate and (2) that the claims in the lawsuit are within the scope of the arbitration agreement. *In re Medallion, Ltd.*, 70 S.W.3d 284, 287-288 (Tex. App. – San Antonio 2002, orig. proceeding). Once

a court finds a valid agreement to arbitrate, the burden shifts to the party opposing arbitration to raise an affirmative defense to enforcing arbitration. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003).

**C.   A Valid Agreement to Arbitrate Exists Between Endura and Altomare**

11.   The Separation Agreement contains a valid agreement to arbitrate therefore satisfying the first prong needed to compel arbitration. *In re Medallion* at 287-288. (C.R. Pg. 18); (Appendix, Confidential Exhibit 1, Separation Agreement, page 4, paragraph 13.) This is not disputed by Altomare. (Oct. R.R. Pg. 6, Line 3-7); (C.R. Pg. 43). In the Separation Agreement, Altomare agreed this procedure governed any dispute related to his association with Endura or the Separation Agreement. (Appendix, Confidential Exhibit 1, Separation Agreement, page 4, paragraph 13.) Endura's arbitration agreement is enforceable because the Separation Agreement is a valid contract. *See generally J.M. Davidson, Inc. v. Webster*, 128 S.W.3d at 227 (ordinary contract principals apply to agreements to arbitrate). Additionally, the Separation Agreement was supported by mutual consideration as stated therein. (Appendix, Confidential Exhibit 1, Separation Agreement, page 1).

12.   Furthermore, Altomare, who was represented by counsel who negotiated Separation Agreement, accepted it. (C.R. Pg. 20); (Nov. R.R. Pg. 32, line 22 through Pg. 33, line 3). The Alternative Dispute Resolution provision was a

bargained for term of the Separation Agreement and most importantly, Altomare does not dispute that a valid Alternative Dispute Resolution agreement exists as it relates to the Separation Agreement. (Oct. R.R. Pg. 6, Line 3-7); (C.R. Pg. 43). There is no doubt the first prong to compel arbitration has been established by Endura. *See In re Medallion, Ltd.*, 70 S.W.3d at 287-288.

**D.     The Claims Brought in the Lawsuit Fall Within the Separation Agreement Triggering the Alternative Dispute Resolution Process**

13.     With the first prong to compel arbitration established, the analysis shifts to whether claims brought by Altomare against Reneau and the claims brought by Endura against Altomare are within the scope of the claims released in the Separation Agreement giving rise to the agreement to arbitrate. *See In re Medallion, Ltd.*, 70 S.W.3d at 287-288. If a party seeking arbitration carries its initial burden to prove the existence of an agreement to arbitrate, then a strong presumption favoring arbitration arises, and the burden shifts to the party opposing arbitration to prove an affirmative defense to the agreement. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). Additionally, if a valid arbitration agreement exists, "courts should resolve any doubts as to the agreement's scope, waiver, and other issues unrelated to its validity in favor of arbitration." *Ellis v. Schlimmer*, 337 S.W.3d 860, 862 (Tex. 2011). To be subject to arbitration, the "allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration

provision." *In re B.P. Am. Prod. Co.*, 97 S.W.3d 366, 370 (Tex. App. – Houston [14th Dist.] 2003, orig. proceeding).

14.     The pivotal question before this Court is whether or not Reneau is an agent or representative of Endura. If the answer is yes, then this Court must compel arbitration because the claims brought by Altomare against Reneau implicate the Separation Agreement triggering the Alternative Dispute Resolution Process contained therein.

**E.      Reneau is an Agent or Representative of Endura**

15.     Once an arbitration agreement is established, "a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006). In other words, if Reneau's status with Endura is susceptible to an interpretation as agent or representative of Endura and thus covered by the scope of the release in the Settlement Agreement, then this Court must compel arbitration.

16.     The trial court erred in refusing to compel arbitration when clearly Reneau is an agent or representative of Endura and thus the claims against him are within the scope of the Separation Agreement therefore triggering the Alternative Dispute Resolution Process. An "agent" is one who is authorized by a person or entity to transact business or manage some affair for the person or entity. *Neely v.*

*Intercity Mgmt. Corp.*, 732 S.W.2d 644, 646 (Tex. App. – Corpus Christi 1987, no writ). An essential element of the principal-agency relationship is the principal's right to control the actions of the alleged agent. *Sendjar v. Gonzales*, 520 S.W.2d 478, 481 (Tex. Civ. App. – San Antonio 1975, no writ). This right includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which the agent will accomplish the task. *Townsend v. Univ. Hosp.-Univ. of Colo.*, 83 S.W.3d 913, 921 (Tex. App. – Texarkana 2002, pet. denied). The fact of agency may be established by circumstantial evidence, and proof may be made of all the facts and circumstances that shows the relationship of the parties and throws light upon the character of such relations. *Welch v. Coca-Cola Enters., Inc.*, 36 S.W.3d 532, 540 (Tex. App. – Tyler 2000, pet. withdrawn) *see also Gutierrez v. Deloitte & Touche*, 100 S.W.3d 261, 271 (Tex. App. – San Antonio 2002, no pet.)(An agency relationship may be found from underlying facts or direct and circumstantial evidence showing the relationship of the parties).

17. The evidence presented to the trial court clearly establishes that Reneau is an agent or representative of Endura. At the hearing on Endura's Motion for Reconsideration, Endura called James G. Lundblad ("**Lundblad**"), a principal of Endura, to testify regarding the Separation Agreement and Reneau's status with Endura. (Nov. R.R. Pg. 13, line 7-13). Lundblad testified unequivocally that Reneau was Endura's agent and representative. (Nov. R.R. Pg.

13, line 14-18); (Nov. R.R. Pg. 19, line 13-15); (Nov. R.R. Pg. 32, line 2-19). Lundblad further testified that Reneau has business cards with Endura's name on them and when Reneau is out in the field leasing and selling properties he represents himself to the public as working for Endura. (Nov. R.R. Pg. 13, line 19-21). Additionally, in the transactions in which Reneau is the point of contact, Reneau is listed on the listing agreement as "Key Agents: Josh Reneau" and his role on these transactions is to work with the property owner as Endura's representative at Endura's instruction. (Nov. R.R. Pg. 14, line 8 through Pg. 15, line 21); (Nov. R.R. Pg. 16, line 5-10); (Nov. R.R. Pg. 32, line 2-19); (*see also* Appendix, Confidential Exhibit 5, Listing Agreement[5]). Reneau has the authority to enter into transactions on behalf of Endura and actively markets on behalf of Endura to obtain listing agreements. (Nov. R.R. Pg. 19, line 16-25). Lastly, Reneau's compensation agreement with Endura lists him as an "Associate," not an independent contractor. (Nov. R.R. Pg. 19, line 10-12); (*see also* Appendix, Confidential Exhibit 6, a true and correct copy of a Compensation Agreement dated January 15, 2009[6]). Clearly, Reneau is authorized by Endura to: (i) manage

---

[5] Confidential Exhibit 5 was admitted during the November 7, 2014 hearing (Nov. R.R. Pg 14, Line 8 through Pg 15, Line 14) but was withdrawn at the end of the hearing to preserve confidentiality (Nov. R.R. Pg 45, Line 6-7). Pursuant to the Clerk's instructions, a true and correct copy of Confidential Exhibit 5 has been filed as part of a separate appendix.

[6] Confidential Exhibit 6 was admitted during the November 7, 2014 hearing (Nov. R.R. Pg 18, Line 12 through Pg 19, Line 6) but was withdrawn at the end of the hearing to preserve confidentiality (Nov. R.R. Pg 45, Line 6-7). Pursuant to the Clerk's instructions, a true and correct copy of Confidential Exhibit 6 has been filed as part of a separate appendix.

transactions, such as properties for sale or lease; (ii) transact business on behalf of Endura; (iii) interface with the public promoting Endura; and (iv) interface with property owners on behalf of Endura, making him an agent or representative of Endura. *See Neely v. Intercity Mgmt. Corp.*, 732 S.W.2d at 644. Lastly, in the eyes of Endura and its principals, Reneau is an agent or representative of Endura. (Nov. R.R. Pg. 13, line 14-18) and (Nov. R.R. Pg. 19, line 13-15).

18. As it relates to Endura's control of Reneau, Reneau does not work for another real estate company. (Nov. R.R. Pg. 16, line 11-13). Reneau is required to come to the office and is also required to attend sales meetings. (Nov. R.R. Pg. 16, line 14-18). Further, Endura has authorized him to market and attempt to acquire listings and properties to sell for and on behalf of Endura. (Nov. R.R. Pg. 16, line 19-22). Additionally, Endura <u>directs</u> Reneau to do "everything" he can to either sell or lease properties for clients that have hired Endura. (Nov. R.R. Pg. 15, line 22 through Pg. 16, line 4). On cross-examination by counsel for Altomare, Lundblad testified that Endura instructs Reneau on how to manage and practice business for Endura and work within the confines of what Endura expects from an Associate further evidencing control of Reneau's work for Endura. (Nov. R.R. Pg. 22, line 4-7). Lundblad further testified that Endura has the authority and control over its agents, such as Reneau, to assign out tasks such as selling or leasing properties. (Nov. R.R. Pg. 20, line 1-11). Lundblad's testimony evidences Endura

exercised control over the means of Reneau's work and provides direction and guidance on how it is to be accomplished thus making Reneau an agent or representative of Endura.

19.     As stated by the Texas Supreme Court in the *In re D. Wilson Constr. Co.* case, "a court should not deny arbitration unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *In re D. Wilson Constr. Co.*, 196 S.W.3d at 783; *see also Emerald Tex. Inc. v. Peel*, 920 S.W.2d 398, 403 (Tex. App. – Houston [1st Dist.] 1996, no writ)("If … the [arbitration] clause is broad, arbitration should not be denied unless it can be said with positive assurance that the particular dispute is not covered."). With this liberal construction in mind, it is clear from the evidence presented to the trial court that Reneau is an agent or representative of Endura and the disputes are covered by the Separation Agreement, thus arbitrable.

## F.     Endura Intended for the Separation Agreement to include Reneau

20.     The intent of the Separation Agreement was to include Reneau and, for that matter, everyone that works with Endura. (Nov. R.R. Pg. 17, line 16-21). The primary concern in interpreting a contract is ascertaining the true intent of the parties. *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011). To understand the parties' intent the court must examine the agreement as a whole in light of the facts and circumstances present at the time

when the parties executed the agreement. *Anglo-Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.,* 352 S.W.3d 445, 450-51 (Tex. 2011). The Separation Agreement was intended to be broad enough to release Endura and all those who could arguably come under the Endura umbrella from any claims by Altomare during his tenure with Endura. This is the reason for the inclusion of broad form language in the release paragraph of the Separation Agreement to include the "Partnership, its related entities, officers, members, partners, limited partners, employees, directors, managers, agents, trustees, administrators, representatives, subsidiaries, affiliates, successors, and assigns." *See* Appendix, Confidential Exhibit 1, Separation Agreement, page 2, paragraph 5.

21. At the November 7, 2014 hearing on Endura's Motion for Reconsideration, Lundblad testified that it was Endura's intention to have a clean separation from Altomare, by way of the Separation Agreement, and to get there they paid Altomare a little more than a partner disassociating from Endura under normal circumstances. (Nov. R.R. Pg. 17, line 7-16). Most importantly, Lundlbad testified that the Separation Agreement was intended to encompass everyone at Endura at the time of Altomare's departure, which includes Reneau. (Nov. R.R. Pg. 17, line 16-21). Furthermore, the Separation Agreement was intended to foreclose any claims for commissions from transactions related to his tenure with Endura (and the covered persons in the agreement) that were not disclosed by

Altomare [on the List] at the time of execution of the Separation Agreement. (Nov. R.R. Pg. 17, line 22-25). The entire purpose of including the alternative dispute resolution paragraph in the Separation Agreement was to abbreviate the length of time that it would typically take for suits such as this one to make its way through the judicial system that might derive from the Separation Agreement. Accordingly, in viewing the circumstances at the time of execution as well as the parties' intent, the Separation Agreement was intended to protect and release Endura, its agents, representatives and all people working under the Endura umbrella from the very claims that Altomare now brings.

## G.    The Separation Agreement

22.    Having shown a valid agreement to arbitrate and that Reneau is an agent or representative of Endura, and thus triggering the arbitration agreement, we must also determine if the claims brought by Altomare against Reneau arise from the Separation Agreement. Altomare has asserted claims against Reneau for breach of contract. (C.R. Pg. 2) In his suit, Altomare alleges he is owed commissions from real estate transactions pursuant to an unwritten "agreement" between Altomare and Reneau to split commissions on real estate transactions they worked on together. (C.R. Pg. 2) Assuming *arguendo* that Reneau and Altomare had a prior course of dealing in which they would split certain commissions on a case-by-case basis, the claims arising under this assumed "agreement" were

released when Altomare executed the Separation Agreement and did not include these transactions on the List.

23. The Separation Agreement in paragraph five states in relevant part:

> Other than to the broker's commissions **specifically indentified in this letter**, in addition to the terms of the Second Amended and Restated Limited Partnership Agreement, you hereby release any claim of any kind that **relates to or involves** your relationship or the separation of your relationship with the Partnership that you may have or acquire against the Partnership, its related entities, officers, members, partners, limited partners, employees, directors, managers, **agents**, trustees, administrators, **representatives**, subsidiaries, affiliates, successors, and assigns. The claims you are agreeing to release include, but are not limited to, all claims, charges, complaints, liabilities, obligations, promises, **agreements, contracts**, damages, actions, causes of action, suits, accrued benefits or other liabilities of any kind or character, whether known or hereafter discovered, **arising from or in any way connected with or related to your tenure with the Partnership** and your resignation from the Partnership, including but not limited to . . . **breach of contract**. . .

(*See* Appendix, Confidential Exhibit 1, paragraph 5, Separation Agreement) (Emphasis added).

Altomare submitted the List, which was comprised of all of the transactions he was currently working on when he executed the Separation Agreement. The List was accepted by Endura and included as part of the Separation Agreement. The real estate transactions Altomare now sues upon were not included on the List; therefore, to the extent any rights to commissions from Endura deals not yet earned or ever existing between Altomare and Reneau, Altomare released his claims to all

those not identified in the List.  The claims brought by Endura against Altomare are for breach of the Separation Agreement.

24.     Most importantly and as stated above, the Separation Agreement included an agreement to arbitrate in accordance with Endura's Dispute Resolution Policy.  Paragraph 13 of the Separation Agreement states:

> In the event there is a dispute between you and the Partnership **related to your association with the Partnership or this agreement**, the Dispute Resolution Policy set out in the Endura Employee Handbook will be employed which is incorporated herein as if fully set forth verbatim

(See Appendix, Confidential Exhibit 1, paragraph 13, Separation Agreement) (Emphasis added).

25.     A plain reading of paragraph 5 and paragraph 13 in the Separation Agreement make it clear that Altomare's claims against Reneau and Endura's claims against Altomare arise from and touch upon the subject matter of the Separation Agreement and therefore triggers the Dispute Resolution Policy incorporated into the Separation Agreement. *See In re B.P. Am. Prod. Co.*, 97 S.W.3d at 370 (allegations need only be factually intertwined with arbitrable claims or otherwise touch upon the subject matter of the agreement containing the arbitration provision).  Therefore, the arbitration agreement contained within the Separation Agreement squarely encompasses the claims raised by Altomare and the claims raised by Endura and this Court must compel arbitration.

**Issue No. 2**:  Altomare failed to present or prove a defense to the enforcement of the Dispute Resolution Policy.

26.     Having shown that the arbitration agreement is valid and that Altomare's claims are within the scope of the claims released by the Separation Agreement giving rise to the arbitration agreement, the burden shifts to Altomare to raise a defense to the arbitration agreement.  *See J.M. Davidson, Inc*. 128 S.W.3d at 227.  The trial court erred by refusing to compel arbitration because Altomare failed to prove a defense to the arbitration agreement.  At the November 2014 hearing on Endura's Motion for Reconsideration of the Motion to Compel Arbitration, the sole defense to the arbitration agreement asserted by Altomare was that Reneau was not an agent of Endura, but an independent contractor and thus not within the scope of the Separation Agreement.  (Nov. R.R. Pg. 8, line 10-16); (Nov. R.R. Pg. 41, line 19 through Pg. 42, line 3).

27.     The fact of agency may be established by circumstantial evidence, and proof may be made of all of the facts and circumstances that the shows the relationship of the parties and throws light upon the character of such relations. *Welch v. Coca-Cola Enters., Inc.*, 36 S.W.3d at 540; *see also* 3 TEX. JUR. 3D *Agency* §50 (1996).  Furthermore, agency may be implied from the conduct of the parties under the circumstances.  *Jorgensen v. Stuart Place Water Supply Corp.*, 676 S.W.2d 191, 194 (Tex. App. – Corpus Christi 1984, no writ).  One may be an independent contractor under some circumstances yet may be an agent or

employee in connection with other work or activities. *Lyons v. Lindsey Morden Claims Mgmt., Inc*. 985 S.W.2d 86, 90 (Tex. App. – El Paso 1998, no pet.).

28. For the reasons stated and based on the evidence set forth in Paragraphs 17-19, it is clear Reneau's work selling and leasing properties and securing listing agreements for Endura is all performed as an agent or representative of Endura; promoting Endura and only Endura. Therefore, Altomare has failed to present or prove a defense to the enforcement of the Dispute Resolution Policy.

## CONCLUSION

Endura has established as a matter of law (1) the existence of a valid agreement to arbitrate and (ii) that the claims in this lawsuit are within the scope of the arbitration agreement. The trial court erred by failing to compel arbitration and this Court should reverse the ruling by the trial court and remand to compel arbitration.

## PRAYER

This Court should reverse the trial court's denial of Endura Advisory Group, Ltd.'s Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process and denial of same on Motion for Reconsideration and remand this case back to the trial court to compel arbitration and for such other and further relief,

whether at law or in equity, to which Endura Advisory Group, Ltd, may be justly

entitled.

Respectfully submitted,

RICHIE & GUERINGER, P.C.

BY: */s/ Gay Gueringer*
    GAY GUERINGER
    State Bar No. 08571400
    DOUG K. CLEMONS
    State Bar No. 24032083
    112 East Pecan Street, Suite 1420
    San Antonio, Texas  78205
    Telephone: 210-220-1080
    Facsimile: 210-220-1088
    Email: ggueringer@rg-sanantonio.com
    Email: dclemons@rg-sanantonio.com
ATTORNEYS FOR INTERVENOR,
ENDURA ADVISORY GROUP, LTD.

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i)(3), I hereby certify that this brief contains 5,438 words, excluding the words not included in the word count pursuant to Texas Rule of Appellate Procedure 9.4(i)(1). This is a computer-generated document created in Microsoft Word, using 14-point typeface for all text, except for footnotes which are in 12-point typeface. In making this certificate of compliance, I am relying on the word count provided by the software used to prepare the document.

*/s/ Gay Gueringer*
Gay Gueringer/Doug K. Clemons

## CERTIFICATE OF SERVICE

This is to certify that on the 27th day of January 2015, a true and correct copy of the foregoing has been served on opposing counsel as follows:

**Via Electronic Service**
Eric A. Pullen
Pulman, Cappuccio, Pullen, Benson & Jones, LLP
2161 NW Military Highway, Suite 400
San Antonio, Texas 78213

*/s/ Gay Gueringer*
Gay Gueringer/Doug K. Clemons

# NO. 04-14-00889-CV

# ENDURA ADVISORY GROUP, LTD., APPELLANT

# VS.

# DOMINIC ALTOMARE, APPELLEE

---

# APPENDIX

---

# LIST OF DOCUMENTS

**Exhibit 1**    **CONFIDENTIAL** Separation Agreement

**Exhibit 2**    Endura Advisory Group, Ltd.'s Dispute Resolution Policy and Procedures

**Exhibit 3**    Order Denying Endura Advisory Group, Ltd.'s Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process signed December 1, 2014

**Exhibit 4**    Order Denying Endura Advisory Group, Ltd.'s Motion for Reconsideration of Denial of its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process signed December 1, 2014

**Exhibit 5**    **CONFIDENTIAL** Listing Agreement

**Exhibit 6**    **CONFIDENTIAL** Compensation Agreement

**EXHIBIT 1**

**CONFIDENTIAL SEPARATION AGREEMENT**

**FILED UNDER SEPARATE APPENDIX**

# Dispute Resolution Policy and Procedures



### *Introduction/Overview*

Unfortunately, from time to time, Endura's Problem Resolution policy does not fully resolve a dispute between an employee and the company. In those situations, Endura has designed this Dispute Resolution Policy to guide resolution of any disputes between its employees and the company.

### *Procedure*

Where allowed by state or federal law, all disputes between an Employee and Endura, regarding Employment Related Matters, other than claims for Worker's Compensation or Unemployment Benefits, shall be resolved solely through binding Arbitration. Arbitration is an essential element of your employment relationship and is a condition of your employment with Endura. The Arbitration process will be conducted under Texas Civil Practices and Remedies Code, Section 151.001 *et seq.* The arbitrator will meet the qualifications of a Special Judge as described in this statute and will also be impartial. This Policy is intended to be construed and subject to Texas law.

Either the employee or Endura may commence the Arbitration proceeding by giving written notice to the other party, stating that the Arbitration process is being commenced, the specific facts which give rise to the dispute, the legal basis, if any, which the notifying party is invoking to support some claim for damages or relief, the relief that the notifying party is seeking and a correct address, phone number and, if available, a facsimile number and email address at which the notifying party can be reached ("Notice"). The notifying party shall file a Petition in the applicable District court, or other court of original jurisdiction, which shall be abated pending the decision of the Arbitrator.

Upon receipt of a Notice commencing the Arbitration process, the receiving party shall have a period of forty-five (45) days in which to serve the notifying party with a written response to the Notice commencing the Arbitration, stating the specific facts which are asserted as a defense to the facts set forth in the Notice and any facts which the receiving party asserts that support a counter-claim, if any, by the party that received the Notice against the party that sent the Notice.

Within sixty (60) days of the commencement of the Arbitration process, Endura shall give to the Employee a statement designating the names and addresses of three (3) persons impartial to Endura and to which Endura will accept as the Arbitrator for the dispute and a date or dates, not less than thirty (30) days thereafter, when the hearing will be held. The Employee shall have fifteen (15) days in which to object, in writing to Endura, to not more than two (2) of the designated Arbitrators. If no objection is received or if less than two (2) of the Arbitrators are objected to by the Employee, Endura shall, within two (2) days of the receipt of objections from the employee, designate, in writing, the name and address of the Arbitrator that will arbitrate the dispute.

EXHIBIT 2

**Timeline recap**

| | | |
|---|---|---|
| 1. | Notice of Commencement of Arbitration | Notice day |
| 2. | Written response from non-noticed party | 45 days from Notice |
| 3. | Designation of Arbitrators by Company | 60 days from Notice |
| 4. | Objection to Arbitrators by Employee | 15 days |
| 5. | Notice of Arbitrators and Hearing | 2 days from objection |
| 6. | Hearing | 90 days from Notice |

The Arbitration hearing shall be conducted at a time and place designated by the Arbitrator. The Arbitrator shall give each party at least ten (10) days written notice of the time and place of the Arbitration hearing. Either party may request one continuance of the Arbitration hearing for good cause shown to the Arbitrator. The Arbitrator shall strictly follow the time line set forth herein and the procedures mandated herein, except that the Arbitrator may delay the hearing for a period not to exceed thirty (30) days to accommodate the schedules of any party, unless the parties both agree to any extension beyond the thirty (30) day extension allowed at the discretion of the Arbitrator.

Endura shall pay the Arbitrator's Fees and expenses charged by the Arbitrator, or for the facility at which the arbitration hearing is held. The Arbitrator shall assess all other costs and fees, including attorney's fees as a part of the Arbitration award.

The Arbitration process, discovery and the hearing shall be conducted in compliance with the Texas Rules of Civil Procedure and the Texas Rules of Evidence. The Arbitrator shall enter his/her ruling, in writing, and shall, upon request of either party, prepare and submit findings of fact and conclusions of law to both parties. An award or ruling by the Arbitrator shall be entered as a judgment of record in the abated judicial proceeding, and shall be fully subject to appeal as if it was tried in a District Court, or any other court of original jurisdiction, outside the scope of the arbitration process.

Both Employee and Endura recognize and agree that litigation is expensive and prolonged and that both parties will benefit from the procedure in this Policy. This policy shall be broadly construed and enforced to favor the Arbitration process as an efficient and effective way of resolving disputes between the Employee and Endura. Both parties benefit from this process. It provides an efficient means for the prompt resolution of any dispute, allowing the employee a prompt resolution to the dispute and minimal loss of earnings from missed workdays and to Endura a minimal disruption in its workforce and involvement of key management time in the process. Any provision of this Policy that shall be determined to be unenforceable in any jurisdiction shall not be read or construed to prohibit or exhaust the rights of either the Employee or Company to the right to Arbitration or Waiver of the Right to Trial by Jury.

**Employee and Endura hereby WAIVE ALL RIGHTS TO A TRIAL BY JURY FOR EMPLOYMENT RELATED MATTERS IN STATE OR FEDERAL COURT.**

EXHIBIT 2

Endura retains the right to amend or terminate this Policy, in whole or in part, on ten (10) days written notice to Employee.  However, any disputes that have been asserted, in writing, prior to the amendment or termination of this Policy, shall still be subject to resolution as set-forth in this Policy.

I hereby agree to abide by this Dispute Resolution Policy, and the related procedures, a copy of which I have received and read.  I acknowledge that my agreement to be bound by this Policy is supported by good and adequate consideration.

I understand and agree that this Policy is not a contract of employment or a guarantee of employment of any specific duration.

EMPLOYEE NAME (printed):     _____

EMPLOYEE SIGNATURE:     _____

DATE:     _____

EXHIBIT 2

CAUSE NO. 2014-CI-11780

| DOMINIC ALTOMARE | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| V. | § | 45TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| JOSH RENEAU | § | |
| | § | BEXAR COUNTY, TEXAS |

## ORDER DENYING ENDURA ADVISORY GROUP, LTD.'S MOTION TO COMPEL ALTERNATIVE DISPUTE RESOLUTION PROCESS AND MOTION TO ABATE PROCEEDING PENDING COMPLETION OF THE ALTERNATIVE DISPUTE RESOLUTION PROCESS

On October 27, 2014, the Court considered Intervenor, Endura Advisory Group, Ltd.'s Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process. After reviewing the pleadings and hearing the arguments of counsel, the Court finds motion should be **DENIED**.

**IT IS THEREFORE ORDERED** that Endura Advisory Group, Ltd.'s Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process is **DENIED**.

Dec. 1, 2014

SIGNED and ENTERED this 7th day of November 2014.

**MARTHA TANNER**
Judge Presiding

_____
Judge Martha Tanner

EXHIBIT 3

APPROVED AND ENTRY REQUESTED:

By: _____
Eric A. Pullen

**ATTORNEYS FOR PLAINTIFF**

APPROVED AS TO FORM ONLY:

By: _____
Gay Gueringer
Doug Clemons

**ATTORNEYS FOR DEFENDANT AND INTERVENOR**

EXHIBIT 3

| | | |
|---|---|---|
| DOMINIC ALTOMARE | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| V. | § | 45TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| JOSH RENEAU | § | |
| | § | BEXAR COUNTY, TEXAS |

**ORDER DENYING INTERVENOR, ENDURA ADVISORY GROUP, LTD.'S MOTION FOR RECONSIDERATION OF DENIAL OF ITS MOTION TO COMPEL ALTERNATIVE DISPUTE RESOLUTION PROCESS AND MOTION TO ABATE PROCEEDING PENDING COMPLETION OF THE ALTERNATIVE DISPUTE RESOLUTION PROCESS**

On this day came on to be heard Intervenor Endura Advisory Group, Ltd.'s Motion for Reconsideration of Denial of Its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process. The Court, after reviewing the Motion, the Response filed by Plaintiff, and noting the arguments of counsel, is of the opinion the Motion should be **DENIED.** It is, therefore

**ORDERED** that Intervenor's Motion for Reconsideration of Denial of Its Motion to Compel Alternative Dispute Resolution Process and Motion to Abate Proceeding Pending Completion of the Alternative Dispute Resolution Process is hereby **DENIED.**

**SIGNED** and **ENTERED** this 7ᵗʰ day of November 2014. Dec. 1, 2014 ⊑1 2014

**MARTHA TANNER**
~~Judge Presiding~~
JUDGE MARTHA TANNER

EXHIBIT 4

APPROVED AND ENTRY REQUESTED:

By: _____
Eric A. Pullen

ATTORNEYS FOR PLAINTIFF

APPROVED AS TO FORM ONLY:

By: _____
Gay Gueringer
Doug Clemons

ATTORNEYS FOR DEFENDANT AND INTERVENOR

EXHIBIT 4

**EXHIBIT 5**


**CONFIDENTIAL LISTING AGREEMENT**

**FILED UNDER SEPARATE APPENDIX**

# EXHIBIT 6

## CONFIDENTIAL COMPENSATION AGREEMENT

## FILED UNDER SEPARATE APPENDIX